THE INHABITANTS OF THE TOWNSHIP OF PERTH AMBOY ADSM. CHARLES M. SMITH.

In Case.   Assumpsit.

1. A person duly elected an overseer of the poor, and acting as such *colore officii*, although he has neglected to take the oath of office and to subscribe and file the same, in the manner and within the time prescribed by the statute, if he has not been superseded by the appointment of another: and especially, if he has been recognized by the township committees, as an overseer of the poor, may bind the township by any acts, by which the township would have been bound if he had been duly sworn into office, so far at least, as respects the rights of third persons.

2. The reason why the doctrine, of officers *de facto*, is applicable to them, but not to surveyors of the highways.

3. If passengers arrive in this state from foreign parts, who are sick, infirm, or otherwise incapable, in the opinion of the overseer of the poor of the township at which they arrive, of providing for their own support: and if such overseer requires and accepts from the master of the vessel, bringing such passengers, bonds, conditioned for the support and maintenance of such

passengers, pursuant to the act of 10th February, 1819, respecting persons arriving in this state from foreign parts, *Elm. Dig.* 388, and permits such passengers to land, he is bound to provide for them in their emergency, and may bind the township by his reasonable contracts for their support and for necessary medical aid, without a special order of a justice of the peace, for specific relief for each individual, under the general act for the settlement and relief of the poor.

Argued and decided orally, at May Term, 1842.

STATE OF THE CASE. On the trial of this cause at the Middlesex Circuit, a verdict was taken for the plaintiff, with leave to move to set it aside and enter a nonsuit; upon the following state of the case, which was certified into this court, for its opinion.

In the month of July, 1837, the ship Phebe, arrived at Perth Amboy, having on board between two hundred and three hundred passengers. On the 1st of August, the plaintiff, (who was the health officer of the city of Perth Amboy,) reported to the mayor of the city, (he being ex-officio, president of the board of health,) the arrival of the ship, with sickness on board : that ten passengers had died on the voyage, and that twelve, were then sick ; some with the small pox, and others with a slow typhus, or ship fever. A permit was soon after given by the board of health, for the sick passengers to be landed. But *John Waite*, who had been duly elected, and was then acting as overseer of the poor of the township of Perth Amboy, (but who had never been sworn into office,) with the advice of some other members of the township committee, (he himself being one,) refused to suffer the sick passengers to be landed, unless the captain, or owners of the ship, would enter into bonds to indemnify the township. By this time the number of sick on board the vessel, had increased to thirty-six : for each of whom, a bond was given by the captain and consignee of the vessel, in the penalty of two hundred dollars, with such condition as the statute directs. In addition to these bonds, the overseer required an advance of five hundred dollars to be made by the consignee ; which sum was placed by the advice and direction of Mr. Brinley, one of the township committee, into the hands of the said overseer, to be appropriated to the relief of the sick passengers. A place having been designated and fitted up for their reception, the captain sent on shore between fifty and

sixty, who were then in a wretched and suffering condition : destitute of money and of clothing : many of them so weak as to be unable to stand : and a number of them so low, as to be unable to speak.    *Waite*, the overseer immediately requested the plaintiff to attend and prescribe for them, as a physician, he did so ; every day, and frequently twice a day, from the time when they were landed, until the 18th October, following ; by which time all had recovered, and gone or been sent away.

In April, 1838, the township committee met as usual to settle the accounts of the township.  Waite presented three bills ; one for his services and expenses, as overseer, for relieving the ordinary poor of the township ; one for relief afforded by him to sick Irish passengers, who had landed from other vessels ; and one for his services and disbursements on behalf of these sick persons from on board of the ship Phebe.  This last bill was accompanied with the plaintiff's account for his services as a physician, amounting to four hundred and four dollars and fifty cents.

The committee allowed and settled with Waite for the first two bills, but refused to allow either his or the plaintiff's bill in relation to these sick passengers.

It was admitted on the trial, that for a number of years preceding this transaction, neither the overseers of the poor, nor the members of the township committee, had taken the oaths of office.

The plaintiff having rested, the counsel for the defendants, moved to nonsuit the plaintiff on several grounds : First, That Waite, never having taken the oath of office, was not overseer of the poor, and could not charge the township by his acts as such. Second, That if overseer, he had no right to afford relief at the expense of the township, without an order from a justice for such relief in the case of each of these poor persons ; And thirdly, That the township was not legally bound for, or in any wise chargeable with the support and maintenance of the persons to whom the plaintiff had rendered the services, for which he was now seeking compensation.

The judge overruled this motion, reserving the questions of law : and after the cause had been summed up, he charged the jury ; that if they believed from the evidence in the cause, and as was contended for by the counsel for defendants, that Waite had

undertaken this business, upon his own private account: upon a contract between himself, as an individual, and the consignee of the ship, either as a matter of profit, or from mere motives of benevolence; and not in his official character, as an overseer of the poor, and upon the credit of the township, then the plaintiff, and all persons employed by Waite, in the execution of the contract, must look to him, and not to the township, for compensation. But if, on the other hand, they were satisfied, that Waite acted in the matter in his public capacity, as an overseer of the poor; and that under a sense of his duty, as such, and upon the credit of the township, he had employed the plaintiff, as a physician, to visit and prescribe for these sick and suffering people, they ought to find for the plaintiff, such sum, as under the evidence upon that point, they might consider him fairly entitled to receive.

The jury rendered a verdict for the plaintiff, for three hundred and seventy-four dollars; and whether he ought to have judgment on that verdict, is the question.

The case was argued by *Geo. A. Vroom* and *Lupp* for the defendants; and by

*J. Vandyke* and *J. S. Green* for the plaintiff.

The opinion of the Court, was delivered by

HORNBLOWER, C. J. The jury having decided, that Waite acted in this matter, and employed the plaintiff, not on his own private account, but in his public capacity, and as an overseer of the poor, it only remains to consider the law of the case.

First, Was Waite overseer of the poor, in any such sense, as to make his acts and doings binding on the township, in matters, in which an overseer of the poor, duly sworn into office, may bind them?

The nineteenth section of the act, incorporating townships, *Elm. Dig.* 571, prescribes the oath of office of an overseer of the poor, surveyors of the highways and other township officers; and the time and manner in which such oath shall be taken. The twenty-first section enacts, that if such officer, shall not take and subscribe such oath, and transmit the same &c., within the time limited, such neglect *shall be deemed a refusal to serve,*

and the township or town committee, may thereupon proceed to a new election. And by the twenty-second section, it is declared, that if any person elected to such office, shall refuse to serve; or shall proceed to the execution of it, before he shall have taken the oath of office, he shall be subject to a penalty of fifteen dollars.

Hence it is insisted, that although Waite, had that year been duly elected, yet never having taken the oath of office, he was not authorized to act as an overseer; and the cases of *Fisher* v. *Allen*, 3 *Halst.* 301; *The State* v. *Davis,* 1 *Green,* 10; *The State* v. *Barnes, Id.* 258; *The State* v. *Northrop,* 3 *Harr. R.* 271, 275, and others of the same kind are cited to establish that position. But they were all road cases, and the principles upon which they have been decided, have not been to my knowledge, and in my opinion ought not to be, extended to overseers of the poor. Surveyors of the highways, although elected by townships, are in a measure, county and state officers. They are to perform duties out of their townships, and affecting the rights of individuals, who had no share in their election. When they are called upon to appropriate private property to public use, by laying out a common highway over the lands of an individual, that individual has a right to insist, that they shall be in all respects legally qualified to act. The law will not, and ought not to permit a man, who so far disregards the law, as to exercise an office, without taking the oath prescribed by law, to have any agency in taking private lands for public roads. But to permit a municipal corporation to avoid its duties or escape its obligations, because they have omitted to appoint proper officers; or to see that their acting public agents, have taken the oath of office, would be to permit them to take advantage of their own neglect; and perhaps, of their wilful and designed omission of duty. In my opinion therefore, whatever acts *Waite* did, as overseer, which would have been binding on the corporation if he had been sworn into office, is equally binding on them now, so far as relates to third persons; on the ground that he was overseer *de facto*, if not *de jure*. 16 *Vin. Abr.* 113, 114, *Let. G.* 2, *G.* 3, *and G.* 4, 5; *Bac. Abr. Tit. Offices and Officers, Let. E. pp.* 189, 190.

The act of the legislature of the state of New York, of 1801, contained provisions, in relation to commissioners of highways,

and other township officers, similar in all respects, to those to be found in our statute on this subject ; and yet, in the *People ex relat. &c.* v. *Collins,* 7 *Johns. R.* 549 ; it was held, that although the commissioners acted without taking the oath required by law, and were thereby liable to a penalty, and might have been superseded by the appointment of others, that their acts were valid, as far as the rights of third persons, and the public, were concerned. That " they were commissioners *de facto* since they came into office by colour of title ; that it is a well settled principle of law, that the acts of such persons, are valid, when they concern the public, or the rights of third persons, who have an interest in the act done ; that this rule is adopted to prevent a failure of justice," in cases of public concern and utility.

This decision, it will be perceived, goes beyond ours, in relation to surveyors of the highways ; and I cannot but think we have adopted the wisest rule on that subject ; inasmuch, as the laying out of new roads, is now more frequently called for, by private convenience, or a neighborhood spirit of speculation, than for public utility. The rule I think ought to be confined to those cases, where the public good imperatively requires an act to be done, without delay ; and where individuals have rights, *ex debito justitiæ*, against the public or other individuals which would fail, for want of a public functionary to act in the premises. I do not mean to say, that other cases may not possibly arise, in which the doctrine of officers *de facto* ought to be recognized ; but as a general rule, it ought to be confined to those I have mentioned. The doctrine is discussed at large in *The King* v. *Lisle, Andrews,* 263. It is obvious however, to remark, that if any case can be presented in which the doctrine of officers *de facto,* ought to be applied, at least so far, as to make his constituents liable, it is that of overseers of the poor. The wants of the poor, are often imperative, and, as in this case, of the most pressing character. Shall a corporate community escape their obligations to relieve them, or to compensate a physician for his services in attending them, on the ground, that they have neglected to appoint, or to cause to be properly qualified, a public functionary to discharge the duty of seeing to the relief of the poor ? I think not ; so long at least, as there is one acting by colour of right.

By setting aside the return of surveyors, when one or more of them have not been sworn into office according to law, we restore all parties to their rights; we place them in *statu quo*, and proceedings may be commenced, *de novo*, with little or no prejudice to any one. We cannot do this by declaring *Waite* to be an unauthorized agent. And if we could, it would not be desirable, to bring back those fifty or sixty human beings, to the miserable condition they were in; even if by so doing, we could restore to the plaintiff all he expended in purse and in services, for their relief.

Besides this, it seems to be with a very bad grace, that the defendants take this objection; since, for similar services, during the very same year, they recognized *Waite*, as an overseer, and settled with him as such.

Second, But it is insisted, that a specific order for the relief of each of these sick persons, ought to have been obtained.

If the liability of the defendants depended upon the general provisions of our act for the relief and settlement of the poor, this point would be properly taken, and would require us to express an opinion upon the construction of the statute in relation to what are termed in the books, " casual poor." It is certainly true, there is no such provision made in our statute for that description of poor, as is to be found in 3 *W. and M. c* 11 *sec.* 11; and in 9 *Geo. I, ch.* 7 *sec.* 1, 2; and it may be questionable, whether, in any case, however emergent, in this state, an overseer of the poor, can make any advances or engagements, upon the credit of the township, without the previous order of a justice of the peace. Such seems to be the doctrine to be collected from the decisions of this court in several cases: *Penn. R.* 76; *Id.* 806; 3 *Halst.* 166, 193, and both the Supreme Court and Court of Errors of the state of New York, where the statute is very similar to ours, have so decided. *Gourly et al.* v. *Allen et al.* 5 *Cowen,* 644; *Hull* v. *The Supervisors &c.,* 19 *Johns. R.* 261.

This case however, stands upon a different footing. By an act passed the 10th February, 1819, respecting persons arriving in this state from foreign parts, *Elm. Dig.* 388, it is enacted, by the first section, that it shall and may be lawful, for the overseer of the poor of the township, at which any ship or vessel may arrive with passengers from a foreign place, to require of the

master and commander of such vessel, *a bond with approved security, to the inhabitants of such township, in a sum not exceeding two hundred dollars, conditioned, for the maintenance and support of any passenger on board, who may be sick, infirm or otherwise incapable,* in the opinion of such overseer, of providing for his or her own support. And the second section subjects the master of any such ship, to a penalty of one hundred dollars, for every sick and infirm passenger, he shall land, except by permission of the overseer, without having first given such bond.

It does seem to me, that a bare recurrence to this statute, ought to have prevented any litigation in this case. Not one passenger was landed without the permission of the overseer. Bonds, with security, in the penalty of two hundred dollars each were given for thirty-six of the passengers, and five hundred dollars in cash advanced to the overseer of the poor : and yet it is contended, that the township was not bound to maintain and provide for these unfortunate beings !

What were those bonds and the money given for ? clearly, to indemnify the township for the expenses it might be put to, in providing for these persons. But if the township was not bound to provide for them ; if under no legal obligation to do so, why require the bonds and the money ? Why not deliver up the former and restore the latter ? The answer given to these questions is, that the bonds, were to indemnify the township against such expenses and charges, *as it might legally be put to,* in maintaining and providing for the persons landed, in case they remained there long enough to acquire a settlement, and should then have occasion to apply to an overseer for relief.

But this is not the meaning of the statute. It is only for sick or infirm persons, and such as are incapable of supporting themselves, that bonds can be required. The statute contemplates their immediate relief. If they were relieved by their friends or the captain, it was well ; if otherwise, the township was bound to do it, and seek remuneration upon the bonds. But it is said, that if the township was bound to furnish relief, the overseer had no right to do so, until he obtained an order from a justice, for each individual, specifying what relief should be given. The answer to this is, that no such order could be obtained : they were not persons *belonging* to that township, and *residing* there

within the meaning of the eleventh section of the act, for the relief of the poor.   It is true, the township was bound to provide them relief, not under the general provisions of that act, but by virtue of a contract entered into by the overseer of the poor, who was their duly authorized agent for that purpose, with the captain of the vessel, and in pursuance of an act of the legislature.

By an act passed in 1838, *Elm. Dig.* 389, which was after the arrival of the ship Phebe, there is an express provision, that if any alien passenger who shall land, by permission of the corporate authority of any city or township, is or shall become sick, infirm, or otherwise incapable of providing for himself, he shall be taken care of by such city or township.   But so far as this last act has any connection with the act of 1819 ; I consider it only declarative of its meaning ; and it was possibly induced by the very circumstances that have occasioned this case.

In *Falls et al.* v. *Belknap,* 1 *Johns.* 486, it was decided, that a previous order for relief is not necessary, where bond has been given for the maintenance of a bastard child, *or helpless pauper ;* but only in the case of a voluntary application of the pauper himself for relief.   See also *Hayes* v. *Bryant,* 1 *H. Bl.* 253 ; and in *Candle et. al.* adsm. *The Mayor &c.,* 1 *Wend. R.* 493, the Supreme Court of New York held, that upon a bond to indemnify and save harmless the Mayor &c. of the city of New York, from all expenses &c., for the maintenance of passengers brought from a foreign country ; no previous order of a justice is necessary, in order to justify the overseers of the poor in affording relief in a proper case.

If therefore, an action by the township of Perth Amboy, on these bonds, for indemnity, the obligors, could not resist the claim upon the ground, that no orders had been made for the relief of these persons, (as, according to the case last cited, he could not,) then surely when the defendants are called upon to pay for services rendered at the request of the authorized agent, they ought not to be permitted to set up such defence.

Upon the whole therefore, I am of opinion, that the Circuit Court ought to be advised, to discharge the rule to show cause, and to give judgment for the plaintiff, with costs.

Nevius, J. gave no opinion, having been of counsel in the case.

*Circuit Court advised to discharge the rule to show cause &c. and give judgment for plaintiff.*

Cited *in Bay* v. *Cook,* 2 *Zab.* 343–351.